## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:16-cr-385-S** |
| | § | |
| **HITESH MADHUBHAI PATEL,** | § | |
| **a.k.a. Hitesh Hinglaj** | § | |
| | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through its attorneys, Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Brian Benczkowski, Assistant Attorney General for the Department of Justice, Criminal Division, the Defendant, HITESH MADHUBHAI PATEL a/k/a Hitesh Hinglaj ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts One and Two of the Superseding Indictment in Criminal Case No. 4:16-cr-385-S, which charges Defendant with a violation of Title 18, United States Code, Section 1349 (Wire Fraud Conspiracy), and Title 18, United States Code, Section 371 (Conspiracy). The defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, proven to a jury, or proven beyond a reasonable doubt.

## Punishment Range

2.   The **statutory** maximum penalty for a violation of Title 18, United States Code, Section 371, is imprisonment of not more than five years and a fine of not more than the greatest of $250,000.00 or the greater of twice the gross gain or twice the gross loss from the offense.   *See* Title 18, United States Code, sections 371, 3571(b)(2)-(3), and 3571(d).   Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years.   *See* Title 18, United States Code, sections 3559(a)(4) and 3583(b)(2).   The **statutory** maximum penalty for a violation of Title 18, United States Code, Section 1349, is imprisonment of not more than 20 years and a fine of not more than the greatest of $250,000.00 or the greater of twice the gross gain or twice the gross loss from the offense.   *See* Title 18, United States Code, sections 1343, 1349, 3571(b)(2)-(3), and 3571(d).   Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years on each count of conviction.   *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2).   Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3).   Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.   Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.   The payment will be by

cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

### Cooperation

5. If requested by the United States, but only if so requested, the Defendant agrees to cooperate with the United States. Defendant further agrees to persist in his plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to **any** criminal activity known to Defendant, including but not limited to conspiracy, wire fraud, postal fraud, identity theft, money laundering, immigration violations, and passport fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas, the Assistant Attorney General for the Department of Justice, Criminal Division and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)      Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States.   Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)      Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)      Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the Defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)      Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)      Defendant agrees that his obligation under this section is a continuing one, and will continue after sentencing until all investigations and/or prosecutions to which the Defendant's cooperation may be relevant have been completed.

## Waiver of Appeal and Collateral Review

7.   Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed.   Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.   Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, as well as any fines, restitution, and forfeiture orders, the court might impose except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255.   In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his

4

conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.   In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office, or the Court.  The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.  *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.   Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10.   The United States agrees to each of the following:

(a)     If Defendant pleads guilty to Counts One and Two of the Superseding Indictment in Criminal Case No. 4:16-cr-385-S, persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining count(s) of the Superseding Indictment in Criminal No. 4:16-cr-385-S at the time of sentencing;

(b)     At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a)

5

of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines; and

(c)     If Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, the United States agrees not to oppose Defendant's request for an additional one-level departure based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense (if Defendant's offense level is 16 or greater).

### Agreement Binding - Southern District of Texas and Department of Justice, Criminal Division Only

11.   The United States Attorney's Office for the Southern District of Texas and the Department of Justice, Criminal Division agree that they will not further criminally prosecute Defendant for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Department of Justice, Criminal Division, and Defendant. It does not bind any other United States Attorney's Office or division or section of the Department of Justice. The United States Attorney's Office for the Southern District of Texas and the Department of Justice, Criminal Division, will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

12.   The United States reserves the right to carry out its responsibilities under Guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

6

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

13.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a).   Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court; and

(c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

15.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts One and Two of the Superseding Indictment.   If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt.   The following facts, among others would be offered to establish Defendant's guilt:

a.    Beginning in 2011, agents with Homeland Security Investigations, the Treasury Inspector General for Tax Administration, the Department of Homeland Security-Inspector General, and others, began investigating and ultimately identified a complex fraud and money laundering scheme in which individuals from call centers located in Ahmedabad, India impersonated government tax and immigration officials, and others, and called potential victims located in the United States to defraud them out of money, often threatening them with arrest, imprisonment, fines, or deportation if they did not pay alleged taxes or penalties to the government. The scam callers convinced the victims to pay or transfer often large amounts of money to the scammers through various methods, per their specific instructions.   In order to liquidate the

proceeds derived from victims of this scheme, numerous U.S.-based individuals (also known as "runners") operating in various geographic locations were employed by the India-based call center conspirators.   The conspirators liquidated the victims' funds in various ways and in a closely coordinated fashion between the call centers, runners, and associates via email, text and instant messaging services such as WhatsApp.   In a typical scenario, call centers directed runners to purchase general purpose reloadable (GPR) cards and transmit the unique card number to India-based conspirators who registered the cards online or via telephone using the misappropriated personal identifying information (PII) of U.S. citizens.   The India-based conspirators then loaded these GPR cards with funds obtained from numerous victims.   The runners used the GPR cards in their possession, loaded with victims' funds, to purchase money orders they deposited into the bank account of another person, as directed.   This fraud activity often occurred on the same day, usually within hours; too quickly for the victim to report the fraud to law enforcement and/or financial institutions in an effort to successfully freeze and recover their funds.   For their services, the runners would earn a specific fee or a percentage.   In addition to laundering victims' funds using GPR cards, runners also received victims' funds via MoneyGram and Western Union wire transfers using fictitious identities/false identification documents, direct bank deposits by victims into the accounts of witting and unwitting bank account holders, and iTunes or other gift cards that victims purchased.

b.      During the course of the investigation, agents identified Defendant HITESH PATEL as an owner, funder, and operator of several India-based call centers from which the fraud schemes operated, including organizational Co-Defendant HGLOBAL.      Alongside his

conspirators, Defendant PATEL defrauded victims, processed fraud payments, and liquidated fraud funds in the Southern District of Texas and elsewhere throughout the United States.

     c.     Defendant HITESH PATEL is an Indian national with no immigration status in the United States.

     d.     From in or around 2013 and continuing through on or about the date of the Superseding Indictment, in the Southern District of Texas and elsewhere, within the jurisdiction of this Court, Defendant HITESH PATEL, along with other co-defendants in Criminal Case No. 4:16-cr-385-S, knowingly combined, conspired, confederated and agreed with each other to commit an offense against the United States in violation of Title 18, United States Code, Sections 1343 and 1349 (Wire Fraud Conspiracy): to knowingly create a scheme or artifice to defraud or to obtain money, property, or other things of value by means of material false or fraudulent pretenses, representations, or promises as set out in the indictment, with the specific intent to defraud, to wit an intent to specifically deceive or cheat someone, through the use of interstate wire communications facilities or causing another person to use interstate wire communications facilities for the purpose of carrying out the scheme, and that the scheme to defraud employed false material representations, in violation of Title 18, United States Code, Sections 1343 and 1349.

     e.     From in or around 2013 and continuing through on or about the date of the Superseding Indictment, in the Southern District of Texas and elsewhere, within the jurisdiction of this Court, Defendant HITESH PATEL, along with other co-defendants in Criminal Case No. 4:16-cr-385-S, knowingly combined, conspired, confederated and agreed with each other to commit an offense against the United States in violation of Title 18, United States Code, Section 371: by agreeing with at least one person to commit the crimes of impersonation of a federal

10

officer or employee, identification fraud, access device fraud, or money laundering, as charged in the indictment, while knowing the unlawful purpose of the agreement and joining in it willfully, that is, with the intent to further the unlawful purpose, and that one of the co-conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

      f.      During the course of the conspiracy, Defendant HITESH PATEL used the telephone number 9879090909 in furtherance of the fraud and money laundering schemes. This telephone number was listed as Defendant PATEL's home telephone number on a U.S. visa application submitted in Defendant Patel's name in or around 2012. This telephone number was also linked to a Facebook page listing username "Hitesh Hinglaj," a known alias of Defendant PATEL. The Facebook photo associated with the "Hitesh Hinglaj" Facebook page appears to be a photograph of Defendant PATEL.

      g.      During the course of the conspiracy, Defendant HITESH PATEL used the email account hitesh.hinglaj@gmail.com in furtherance of the fraud and money laundering schemes. This email address was also listed on Defendant PATEL's 2012 U.S. visa application. On or about November 28, 2011, the hitesh.hinglaj@gmail.com email account was used to send scanned images of a passport belonging to Paruleben Patel, the wife of Defendant PATEL, to the email address dhruv.parthank@hdfcbank.com. On or about May 9, 2014, the hitesh.hinglaj@gmail.com email account received an email from rajumavadiya@yahoo.com, containing Defendant PATEL's Indian tax returns for 2012-2013, and 2013-2014.

      h.      During the course of the conspiracy Defendant HITESH PATEL and his conspirators also used the email account acsglobal3@gmail.com in furtherance of the fraud and

money laundering schemes. A search warrant for this email account returned subscriber information that listed the SMS telephone number for the email account as 98790909090, and the recovery email account as hitesh.hinglaj@gmail.com.

i.      Defendant HITESH PATEL's Indian telephone number, 98709090909, was included on 39 email messages or chats located in the acsglobal3@gmail.com email account. For example, on or about February 2, 2012, the following Google Chat was exchanged between acsglobal3@gmail.com and magic.payment55@gmail.com:

> *Magic.payment5 5: Magic.payment55@gmait.·com*
> *Magic.payment55: Ane par*
> *Me [acsglobal3}: su????*
> *Magic.payment55: Leads*
> *Me [acsglobal3}:*
> *Me [acsglobal3}: call 9879090909 ·*
> *Me [acsglobal3}: Hitesh bhai*
> *Magic.payment55: K*

j.      On or about April 18, 2013, an email was sent from acsglobal3@gmail.com to joseph.black1023@gmail.com containing a spreadsheet with lead data titled Sample 700.xlsx. The email content read, "*NOT used Fresh Data, HITESH HINGLAJ, 9879090909.*"

k.      During the course of the conspiracy, hundreds of emails were exchanged from the email account hitesh.hinglaj@gmail.com with email accounts operated by India-based Co-Defendants JANAK SHARMA, RAJPAL SHAH, MANISH BHARAJ, TARANG PATEL, TILAK JOSHI, ABHISHEK TRIVEDI, ASHWINBHAI KABARIA, and U.S.-based Co-Defendants MITESHKUMAR PATEL, and RAJUBHAI PATEL. The majority of these emails contained lists of credit card numbers, deposit slips, payment information, scam scripts, Magic Jack account information, call center operations information and instructions, and bank account information.

l.      On or about June 24, 2014, an email was sent from hitesh.hinglaj@gmail.com to fastforward0l@gmail.com with the subject line "hi, check the attachment". The body of the email read, "attached are the details of illegal immigrants, please do the needful to get money out of them. Thanks and Regards, Hitesh Hinglaj." The email's attachment contained a list of five names accompanied by U.S. phone numbers and addresses.

m.      A query of the hitesh.hinglaj@gmail.com account for the term "script" in the subject line of the body of emails revealed that the email account was used to receive or send scripts for telephone impersonation fraud on 25 occasions. The scripts included IRS impersonation, USCIS impersonation, Canada Revenue Agency (CRA) impersonation, Australian Tax Office (ATO) impersonation, payday loan fraud, US Government grant fraud, and debt collection fraud. As an example, on or about June 24, 2014, an email was sent from hitesh.hinglaj@gmail.com to fastfurious9933@gmail.com with the subject "Fwd: Script-Immi", containing an attachment titled "Script-Immi.docx" which included an English-language script that provided exact language on how to conduct a USCIS scam, including threatening arrest and deportation. As another example, on or about November 29, 2013, an email was sent from hitesh.hinglaj@gmail.com to software2712@gmail.com that included call scripts for a false government grant scheme.

n.      On or about September 17, 2013, an email was sent from hitesh.hinglaj@gmail.com to rajpalshah24@gmail.com, an email account used by Defendant HITESH PATEL's India-based Co-Defendant RAJPAL SHAH, with the subject line "Fwd: IRS Script." The email contained a Microsoft Word File titled "I R S.docx" that contained a script for the IRS impersonation telephone scam.

13

o.      On or about November 27, 2013, an email was sent from hitesh.hinglaj@gmail.com to manish.bharaj@gmail.com with the subject "Fwd: IRS Leads". The email contained a Microsoft Excel file titled "IRS Leads for HGLOBAL.xlsx". The list contained 101 records of individuals including name, address, telephone, Social Security Number, date of birth, indicator on how much IRS tax debt was owed, and employer information.

p.      Green Dot records showed that Defendant HITESH PATEL's cell phone number, 9879090909, was used to access 65 separate GPR cards using Green Dot's automated telephone system. During the course of the investigation, investigators identified at least 1,500 telephone numbers used by Defendant PATEL and his conspirators to access Green Dot's automated telephone system. Approximately 79 of those target telephone numbers accessed GPR cards located in the email accounts hitesh.hinglaj@gmail.com and acsglobal3@gmail.com, or GPR cards that were accessed by Defendant PATEL's cell phone.

q.      On March 7, 2012, an email was sent from acs.wun@gmail.com to hitesh.hinglaj@gmail.com indicating that 41 Magic Jack devices had been shipped via UPS to India-based Co-Defendant TILAK JOSHI in India.

r.      During the course of the conspiracy, monthly income and expense reports for call centers were sent to the email account hitesh.hinglaj@gmail.com.

s.      Co-Defendant M.P. described Defendant HITESH PATEL as follows: he was the top person in India and the boss for whom most of the other defendants worked. Defendant PATEL invented the extortion scheme model utilized by the India-based call centers. He owned six or seven call centers, each of which employed 50-100 people. Co-Defendant M.P. personally

met Defendant PATEL in India on two occasions, and communicated with Defendant PATEL on the Indian cell phone number 9879090909, and the email account hitesh.hinglaj@gmail.com.

t.      Co-Defendant H.P. described Defendant HITESH PATEL as follows: He was the owner of organizational Co-Defendant and India-based call center HGLOBAL.   In 2012, Defendant PATEL recruited him into becoming his partner in a call center offering fictitious pay-day loans.   Defendant PATEL later expanded with partnerships in other call centers, for which Co-Defendant H.P. managed profit and loss statements.   Defendant PATEL received payments from other call centers, handled and managed cash for the call centers, and also dealt with hawaladars who assisted the call centers in laundering fraud funds.   Defendant PATEL's call centers began running IRS and USCIS impersonation scams in 2013, and his employees recruited other call centers to operate telefraud schemes by providing them with training, lead lists, and scripts.   Co-Defendant H.P. personally saw Defendant PATEL working in telefraud call center schemes with India-based Co-Defendants JANAK SHARMA, ABHISHEK TRIVEDI, TILAK JOSHI, MANISH BHARAJ, TARANG PATEL, SAURIN RATHOD, SAGAR THAKAR, and RAJPAL SHAH, amongst others.   Local Indian police frequently visited Defendant PATEL's call centers.   Defendant PATEL was arrested in India in October 2016, but then paid a bribe and was released.

u.      A reasonably foreseeable loss of more than $25 million but less than $65 million, is attributable to Defendant HITESH PATEL, based on the government's evidence in this case.

This stipulation does not attempt to set forth every aspect of the Defendant's involvement in the case, but rather to set forth those facts necessary to serve as a factual basis for the Defendant's guilty plea in this case.

**Breach of Plea Agreement**

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

**Restitution, Forfeiture, and Fines – Generally**

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States. The Defendant further agrees to be polygraphed on the issue of assets, if requested to do so by the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security

16

information.   Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19.   Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, repatriating assets located abroad, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20.   Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

21.   Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction.   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s).   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

22.   Defendant stipulates and agrees that all property, real or personal, that constitutes or is derived from proceeds traceable to the conspiracy to commit wire fraud, as listed in the

17

Superseding Indictment's Notice of Forfeiture (and in any supplemental Notices), is subject to forfeiture, and Defendant agrees to the forfeiture of that property.   That property includes, but is not limited to:

- One black OnePlus 6 mobile phone (IMEI no. 868263037417578 & 868263037417560)
- One grey Mi MDl6 mobile phone (IMEI no. 865397038246868 & 865397038246876)
- One black HP laptop (S/N CND64515LC)

For purposes of entering said order of forfeiture, Defendant acknowledges that a nexus exists between the assets listed above and the criminal offense to which Defendant is pleading guilty.

23.   The parties agree that the amount of real or personal property that constitutes or is derived from proceeds traceable to the wire fraud conspiracy to which the Defendant is pleading guilty, in violation of 18 U.S.C. §§ 1343, 1349, and the general conspiracy to which the Defendant is pleading guilty, in violation of 18 U.S.C. § 371, is $ 58,012,034.17 in specified unlawful activity proceeds.   Defendant stipulates and agrees to the entry of an order for substitute assets against him and in favor of the United States of America at the time of sentencing.   Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists.   Specifically, the parties agree that the proceeds the Defendant obtained have been transferred, sold to, or deposited with a third party, have been placed beyond the jurisdiction of the court, and have been commingled with other property which cannot be divided without difficulty, as a result of the Defendant's own acts or omissions.   Defendant agrees to forfeit any of his property, or his interest in property, up to the value of any unpaid portion of the forfeiture order, until the order is fully satisfied.

18

24.   Defendant agrees to forfeit and abandon all of the defendant's interest in all items seized by law enforcement officials during the course of their investigation.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.   With regard to all forfeitable assets, the Defendant agrees to take all steps necessary to ensure that the property is not hidden, sold, wasted, destroyed, or otherwise made unavailable for forfeiture. In addition, the Defendant agrees not to file a Statement of Interest, Offer in Compromise, Answer, claim, or petition for remission for such asset in any administrative or judicial proceeding that may be initiated or that has been initiated. To the extent that the Defendant has filed a Statement of Interest, Offer in Compromise, Answer, claim, or petition for remission for any such asset, the Defendant hereby immediately withdraws that filing.

25.   Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

26.   Subject to the provisions of paragraph 7 above, Defendant waives any and all constitutional, statutory, and equitable challenges in any manner (including direct appeal, habeas corpus, or any other means) to any disposal of such property carried out in accordance with this Plea Agreement on any grounds.   The Defendant acknowledges that assets (listed or unlisted in this agreement) may have been forfeited administratively prior to the execution of this agreement, and the Defendant hereby waives any interest in such assets; all constitutional, legal, and equitable claims to such assets; and all defenses to the forfeiture of such assets in any proceeding, including proper notice, timeliness of the notice, innocent ownership, defenses arising in connection with

19

any provision of 18 U.S.C. § 983, or excessive fines or punishment. The Defendant also waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this Plea Agreement. The Defendant further agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or disposal of such property. The Defendant acknowledges that the United States will dispose of such property and that procedures governing such disposal are for the benefit of the United States and do not confer any rights whatsoever upon him.

### Fines

27. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 8 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

28. This written plea agreement, consisting of 22 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _____Houston_____, Texas, on ___January 9___, ~~2019~~. 2020

_____
Defendant

Subscribed and sworn to before me on ___January 9___, ~~2019~~. 2020

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
S. Mark McIntyre
Craig M. Feazel
Assistant United States Attorney
Southern District of Texas

Brian Benczkowski
Assistant Attorney General

___/s/_____
Mona Sahaf
Trial Attorney
U.S. Department of Justice
Criminal Division
Human Rights and Special Prosecutions

___/s/_____
Amanda Schlager Wick
Trial Attorney
U.S. Department of Justice
Criminal Division
Money Laundering and Asset Recovery Section

_____
~~Mary Elizabeth Conn~~  Matthew Furness
Attorney for Defendant

21

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:16-cr-385-S |
| | § | |
| HITESH MADHUBHAI PATEL, | § | |
| a.k.a. Hitesh Hinglaj | § | |
| | § | |
| Defendant. | § | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          12/21/2019
Attorney for Defendant                              Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          12/21/2019
Defendant                                            Date

22